Good morning, everyone. The panel has before it a total of five cases. Three are being submitted on the brief without oral argument today. Those are Appeal 5091 from 2008, Stephanatos v. United States, Appeal 1444 from 2008, Panavise Products v. National Products, and Appeal 3323 from 2008, Daniels v. Merit System Protection Board. We'll hear oral argument first in Appeal 1077 from 2008, ICU Medical v. Alaris Medical. Mr. Schorkenbach, good morning to you. Welcome back to the Court. Please proceed. Good morning, Your Honor. Thank you. Please, counsel, ladies and gentlemen of the Court, and I guess this is the first argument of the new year. Happy New Year. I'm going to devote a little bit of time this morning to just two of the issues that are in the briefs. The first is the spike claim construction, and the second is the written description issue. And rest on the briefs for the rest, unless the Court has questions that you'd like me to address. As to the spike claim construction, obviously there are two issues there fundamentally. One is whether a spike requires specifically a point, and the other is whether a spike requires specifically a piercing function, that the spike pierce the seal. Well, I thought the trial judge said pointed or rounded at the top. The judge's construction requires a point and says that the point may be slightly rounded, whatever that means. And I'm not sure that was really litigated at the point where either side knows exactly what that means. But point is in the construction. And in our view, that shouldn't be in the construction. You could have a point, you could not have a point, as we've said in the brief. The specification explicitly says that you can have a hole at the tip. If you have a hole at the tip, you either don't have any point or you have not much of one which has a hole in it. One other point on this is there is disclosure in the specification, therefore, of what is essentially a hollow tube. I wanted to back up for a minute because I think the briefing didn't necessarily focus on sort of the biggest picture, which is... I want to back up for one second before you move off of it. Yes. I mean, I have a quote here from the district court's claim construction, which tip may be sharp or slightly rounded. So it seems to me that the district court, while he definitely used the word pointed, an elongated structure having a pointed tip for piercing the seal, but then he further defined that tip as possibly being rounded. I'm not missing anything on that. No, you're correct. And maybe the answer to this is if that construction would allow what is essentially an open tip... Like a tube. Like a tube that has a hole in it, we would have no problem with that. You mean flush, something flat. Sure, sure. If that's construed to be a tube with a tip that is slightly rounded, fine. Is that tube capable of piercing the seal? Sure, sure. In operation, it is. There's no requirement that a tube have a pointed tip in order to pierce that seal. I mean, you think the simplest example of a straw, if it were a sufficiently rigid straw or tube, it would pierce that seal just fine. I don't think there's actually any evidence... Would you call a straw a spike? I think in the context of this patent, you would. I mean, it seems in ordinary parlance, probably not. Wearing the patent gives you the idea that a spike could include something that doesn't have some sort of pointed tip. I mean, spike has a common meaning to one of skill in the art that would seem to me to suggest something with a tapered end. Now, it could be rounded, it could be hollow, it could be very pointed, but it nonetheless would suggest some sort of pointing which would almost be like a pencil once sharpened. Yes. I think this, if I can just take up the ordinary meaning point first, because I actually think it's quite important. This case, I think, is in many ways a poster child for what Phillips told us not to do in the first instance, which was go running off to a dictionary before you read the specification. There is no accepted meaning in the art of medical connectors of the word spike. You'll notice the dictionaries that Alaris cites to are its Webster's. We're not talking about nails, okay? We're not talking about spikes on the bottom of running shoes. This is a medical device case, and where we start is in the specification, and the specification shows, does it show spikes that have tips? Yes. But they're hollow, so right away you have to put to one side everything you think you know about a spike being something like a nail and being driven into wood or something like that, because those aren't hollow. They aren't tubes. Sure they are. You can buy hollow-tip, all kinds of spiked-looking things, whether it's a hollow-tip nail or a screw to a hollow-tip bullet. There's all kinds of things which can be carved out on the inside, but would nonetheless, I would think, meet what one would think is the standard definition for a spike because of its external shape. But if you proceed from what is shown in the specification, again, without resorting to the fact that every spike is shown as a hollow tube, they happen to have a closed tip in the drawings. That's true. But the specification explicitly says you don't have to have a closed tip. So if you put together the disclosure of hollow tubes, every one of them is a hollow tube, and you accept the fact that, as the specification says, that you can have a hole at the tip, they're tubes, and everything else is just relative. Show me where exactly, if you don't mind, in the spec it says you can sort of shave off the pointed end and have an opening rather than a tapered, pointed end. I'm in the 592 patent, if that's easiest for you. I happen to have the 866, but I think it's in essentially the same area, Your Honor. It's at the top of column 3. There's a paragraph. In the 866, it's column 3 beginning at line 1. In the 592, it would be a few lines down. There's a paragraph that begins the second feature. Yes, it's line 8 in the 592. The second feature is that the spike has a tip with at least one hole located at or near the tip, and a passageway in communication with the hole that allows fluid to flow, at or near the tip. It can be at the tip. If the hole's at the tip, you've got a tube. But you still have a spike with a hole at the tip, right? You actually use the word tube in various places in the patent specifications as distinct from spike. I don't see anywhere where spike is equated to tube. So, I mean, like a needle. A needle would nonetheless be considered a spike by most people. It has a tapering edge, but fluid can also flow out the end. There is, in fact, a hole. Yes, yes. Not a tube. I think that is not a substantive distinction. So when the applicant later claims... But do you use the word tube in this patent? In another context. Yes, we do. We do. Yes. But I don't think that... I don't see how that detracts from describing something that's called a spike, which is a hollow tube with an open tip, recognizing that that's also a tube. It is also a tube. I mean, there really isn't... What's, in a way, to me, remarkable about the case is no one is actually arguing that if you take what is explicitly disclosed, which is a hollow tube with a point, and you put the hole at the tip, which is explicitly disclosed, you have a tube. You have a tube. And the specification doesn't say it has to be any particular length. It doesn't say the hole has to be any particular size other than at least as big as, preferably an 18-gauge hole, which as we showed in the brief is actually a pretty... It's a pretty big hole. And so you've got that all there. What about the doctrine of equivalence? Is that out of the case for some reason? I mean, it seems to me that if we were to say spike is spike, which is what the district court said it was, and we were to agree with that, if we were to, what about the doctrine of equivalence? Would you have the ability to argue that a tube with a hole on the end can pierce a seal identically to a spike and therefore, under the doctrine of equivalence, amounts to an insubstantial difference? This is where the piercing limitation comes in. Could we argue doctrine of equivalence as to the first part of the construction requiring a point that could be slightly rounded? Yes, because that clearly could cover a tube that has a hole in the top. But the construction goes on to say that, as we understand it, that the spike has to in fact pierce the seal. That doesn't happen in the Alaris device. And that's the fundamental reason that my client below did not argue equivalence as to the overall construction because there is no piercing of the short tube in their device through the seal. Now, interesting fact, why is that? Why did they actually design a device that has a seal, that has a body, that has a tube, that really has, in our view, of course not in theirs, everything that's in the patent except they take the point off of the spike and they make it short. The reason is because their seal operates just like the trampoline seal in and this is why they were not able to and chose not to contradict the declaration of Mr. Rogers who said, look, this trampoline seal, you put a medical implement in its pre-slit, it's trapped at the top, you put a medical implement on that and it opens. The problem is everywhere you refer to the trampoline seal in the specification, it's talked about how that pre-slit will enable the spike to more easily pierce the seal. It's never a substitute for a spike piercing the seal, at least in none of the embodiments in any of the various patents here that I found. Am I missing anything on that? No, that's correct. I understand your argument is it could. It could operate independent. You don't need the spike if you've got the trampoline seal, but nonetheless the disclosure always talks about that trampoline seal split as aiding the spike piercing. In the disclosed embodiments. So I guess the question is what is the burden of the patentee? Does there have to be explicit disclosure of every possible variation on that? I don't believe so under the court's case law. There's no dispute that the trampoline seal operates as Mr. Rogers says it operates. It in fact will always open when the medical implement compresses it. You don't need a tube or a spike or anything else to pierce that seal. That's inherent in this specification. It's not could of. It's not obvious. It's inherent. It's there. Is this a good time to move to your written description argument? I'm worried you're not going to get any time on it. We've got a few minutes left here. Perhaps we should. Let me just finish that point. Given that disclosure in the specification, this is on the clean construction issue, you can't say that this specification disclaims spikes that do not pierce a seal. I didn't see them argue that. No one argued disclaimer, did they? They didn't, but the standard under the case law is unless the feature that's now trying to be claimed was disclaimed, unless it was used to distinguish the prior art, unless there is something in the specification, in the intrinsic evidence, that says you can't claim that, the claim should be allowed to be interpreted broadly to cover it. Let me go on to written description, if I may. The parties agree it's a question of fact, and it turns on what a person of ordinary skill in the art would understand the specification to teach that's given. We put in Mr. Rogers' declaration. It's in the record. ALERIS did not put in its own declaration and did not contradict what Mr. Rogers had to say. Now, this is not a case, just before I go on to the substance of it, and the reason for that, again, I think is very important. Because their device operates in substance exactly like the trampoline seal in this patent. It opens when the implement compresses it without any need for a spike to pierce it. Now, they still have a short tube in there. Why is that? Well, if you look at the findings submitted in support of the non-infringement order and submitted in support of the invalidity order, one of the functions of that short tube is to conduct fluid to the seal. You're losing me. Are we on written description? Why are we focusing on the accused device for purposes of determining whether your specification has written a description for your claims? Because I'm observing why it is that what our expert says has to be taken. Not only has to be taken as true, in fact, it has not been controverted by ALERIS. So Mr. Rogers has relied on specific disclosure in the specification as to what the specification teaches to one of skill in the art. And there's no dispute that there's an embodiment of the seal that opens and that doesn't require a... The district court went through in quite a lot of detail the testimony of Dr. Slocum, explaining why that wasn't probative of anything, explaining why his analysis was predicated on an incorrect claim construction or on claim reading of the SPAC. And obviously you disagree with that. But on its face, what the district court concluded, if she were right, would be sufficient to allow for summary judgment, right? To defeat the notion that there's a factual issue. Actually, I don't think so, Judge Prost, and I'll tell you why. First of all, the fundamental reason, as it appears to me, the fundamental reason that Judge Felzer essentially put to one side the Rogers declaration is that she thought Mr. Rogers had contradicted her claim construction. I read the declaration and I don't see that. That's not there. In fact, in paragraph 48 of the declaration, Mr. Rogers says, I understand the court's claim construction. Here it is. I don't have any problem with it. What he is talking about is what is disclosed in the specification that is something in addition to or other than a spike which is pointed and which pierces the seal. Is there disclosure of something else? He didn't disagree for a second about what the judge had concluded the spike meant. That's the first point. The second point was the judge also seemed to think that Mr. Rogers' declaration contradicted the specification. And again, there again, if you look at what is actually in the declaration, with all due respect, I don't think that's a fair characterization of it. He points to, and this is why this case is different than many of the other written description cases that Olaris cites, where you've got a conclusory expert declaration that just states the conclusion without tying it to something that's in the specification, specific disclosure in the specification that says, look, you've got a seal here that opens with compression and you don't need a spike to pierce it. That's in the specification. Look, you've got disclosure in the specification here of allowing a hole at the tip of a spike. That turns it into a tube. So you've got an expert saying these things. He's tying them to the specification. There's no dispute by the other side. We think that creates a factual issue on the written description issue and should have allowed this case to go to the jury. My time is up. I'll reserve the rest for rebuttal if I may. Thank you. Mr. Malloy. Good morning. Good morning to the Court. Your Honor, this case represents a total disconnect between what the patent actually says and the patent owner's litigation version, and it violates two fundamental public policies of patents. One is that you claim, and absent some specific disclaimer, use the ordinary meaning of the terms. And two is that you set forth what your invention is in a written description. ICU did that, and they did it very clearly. They said our invention represents reverse technology. Rather than a needle with a point with a hole at the end piercing from the external side, a spike with a point is placed on the inside to pierce the seal from the inside. But if the specification discloses this trampoline seal, which is a pre-slit seal, then why would it be necessary? Why are we needing and using and requiring a spike that pierces when there's already a slit? Because the specification is very clear that that trampoline seal operates only with a spike, contrary to what we heard Mr. Schirkenbach say. That seal is 36A, and it's very clearly defined as saying, and the spec is after that. So why would you need a spike that pierces the seal if it's already pre-slit? The pre-slit is there specifically to allow the spike to pierce more easily. That's the only reason the spec gives for it. Actually, they had two disclosures, one with no slit, that was in the 91 application, and one with a pre-slit, actually it said pre-cut. And the only reason given for the pre-slit in the spec was to facilitate piercing, so that you wouldn't tear. But is there any suggestion elsewhere in the spec that without a pre-slit seal, there's some difficulty in using a spike that pierces? There's a suggestion that you have a difficulty with a spike always, and they say that this can lead to actually death, because when the spike pierces the seal, it can cause coring of the material, and it can cause plugging, and it can cause tearing. And yet not once do those three critical problems, which would cause death, not once are they solved by this imaginary stubby tube that ICU concocts. The only way they're solved is twofold. One is by taking the hole at the tip and removing the hole at the tip and putting it downstream. And the second way is... Wait, just to go back to my earlier point before we go off on that. Is it not correct that a stubby end would be able to pierce a pre-slit seal? There's no evidence to that whatsoever, and certainly not when it's short. And Mr. Schirkenbach said one thing, Your Honor, that I thought was very important. He said that there was no evidence in the record as to what the length of the spike should be. That's just not correct. There's a specific teaching in the specification that the spike must be either embedded in the seal or at most 0.025 inches away from the seal. And why is that? So that the spike always pierces the seal in every activation, in every disclosure. So that statement that a short stubby tube could ever pierce a seal is incorrect. And I think one of the other fundamental statements that we heard over and over again from Mr. Schirkenbach, Your Honors, is that we... This isn't getting... Well, I'll go back. Let me go back to the ordinary meaning. We also heard that there was no ordinary meaning of the term apart from the specification. That's not correct either. If you look at page 8 of our brief, there is a specific disclosure of a spike, and it says a spike... And this is one of the prior references. Spike connector 112 is designed to pierce the port. That's at appendix page 889. And then he says there's no teaching in the ordinary meaning that a spike has a point. That's the text, intervascular systems, at appendix page 2215. And there it's stated, and I quote, Every set begins with a sturdy plastic piece having a sharp point called a spike. Appendix page 2215. Now, one of the many reasons giving rise to the attorney's fees was that once having asserted the spike claims originally weren't part of the case, they went with all spikeless claims in their first complaint and then added them when they got in trouble on the written description. One of the reasons for adding them was it drove them to what I would regard and what I assert are a series of frivolous positions where they took literally four different interpretations of spike. First they said it was... But I thought the district court excluded from her analysis on the exceptional case the conduct that occurred with respect to the TRO. No, Your Honor. In fact, they've admitted that that was support for the exceptional case, and they failed to appeal the exceptional case finding. She awarded $1 million for the TRO PI, and they've not appealed that. They've admitted that it is exceptional. And then she awarded an additional $3 to $3.5 million for the continuing conduct. And she found that the continuing conduct was an expansion of the exceptional case. They start with only spikeless claims. They conceded. They admitted that there was no spike inside the device in written documents. They told the patent office that a short stubby tube was literally spikeless, said that under oath. And then when they get in trouble on written description in the TRO PI, that's when they were driven to go to the spike claims that had existed six years earlier. In 1997 they were issued. And it was that decision that drove them to making all these what I would regard as ludicrous and frivolous positions, including their keystone argument in the court below where they had this elaborate argument about how you could have a short little spike that would never pierce and had no point. And Mr. Rogers' declaration completely ignored the key specification teaching that said the spike had to be embedded in or at most 0.025 inches away from the seal. So now they've abandoned that in the name of expediency. But in doing so, they've been driven to four different definitions that are inconsistent. First they said it had to have a functional element to keep the thing open. Then they said no, it couldn't have a functional element. Then they said it had to be an upright projection and realized that downward spike of figure seven was excluded by their own definition and that the term spike would have two different meanings, the very same word. And finally they said no, it only applies to spikes that are contained within seals. So apparently a spike that may be a spike inside a seal and then you move it out and it's no longer there. They were driven to ignore all dictionaries. Now those are generals, true. They ignored all the treatises in the IV solutions field. So you'd have a spike connecting a bag that would be pointed and piercing here and then just down the line of this very same patient, very same tube, you'd have a spike that had a completely different meaning. Counsel, if we were to disagree with you on one part of this case, whether it be claim construction and therefore infringement or written description, tell me what that would do to the sanctions position. Do I have to vacate and remand the entire thing or just a part of it? The Rule 11 would remain, Your Honor, in my view. Down below they had no Rule 11 support. That is to say they didn't weigh the privilege. But the Rule 11 wasn't the basis of the money, right? In fact, didn't she say for Rule 11 all the damages are subsumed in the 285? Absolutely, she did. So then at a minimum she would need to clarify which portion were for Rule 11 and which portion was for 285. She would. And then on an exceptional case, Your Honor, there is a federal case, whose name escapes me at the moment, which says where the party succeeds on a major portion of the case that the case can be exceptional for that reason even if the success isn't 100% across the board. In this case, for example. In other words, you're talking about the prevailing party requirements? Yes. You don't know the case. And forgive me, I had it and it doesn't come to mind. Do you want to spend some time talking about the written description? I do. And I think the major point I would make there are that we have provided written description is routinely decided despite the fact that it's a question of fact. And there's also, by the way, the regards as his invention, which is a question of law. Very closely related, but one is a question of fact, the other of law. It's a statutory requirement. Are you talking about Paragraph 1, Paragraph 2, indefiniteness versus written description? No, I'm talking about the written description requirement on the one hand, and then the claim must claim what the inventor regards as his invention are the words of the statute, and that's Paragraph 2. And it's been determined by the Allen case that that is a question of law and that where you claim something that the inventor did not regard as his invention, that that violates the requirements of the statute. So here we have an important public policy. And all of the claims, the Paragraph 1 and Paragraph 2 invalidation is identical with regard to all of the claims, right? All of the claims that have no spike in them. Correct. Okay. Got it. So we've got either it's got to be written description, it's got to be either literal, literally they are expressly there or inherent, they've abandoned the express, they admit that all the ones that are discussed are not there, and then they go to the trampoline and say that Roger's declaration has been not rejected, not refuted, and so it must be followed. That's not correct, and that's not accurate. Okay. First of all, this court on repeated occasions in six separate cases has granted summary judgment or JMOL, Rochester, TurboCare, PNIP, PowerClass. Okay, counsel, let me ask you a question. I have a bicycle, two wheels. I invent a new chain. New chain, really cool, novel, non-obvious, everybody agrees. Chain is very exciting. My initial claims in patent number one are two, two wheels, handlebars, seat, chain. I explain how it all connects together. I then file a continuation. The continuation has one claim in it, the chain by itself. Now you would agree with me, wouldn't you, that that's appropriate, that I disclosed the chain in the first patent, the specification unequivocally discloses the chain. Could I then file a later claim without fear of written description problem for just this novel, non-obvious chain? If you have disclosed a separate utility and disclosed a separate functionality of the chain that can exist on its own, the answer would be yes. But where that analogy breaks down is that this is a valve, and the only thing the valve has to do is open and close, and it must do it securely. And what they've claimed is a valve that won't work. They've claimed a spikeless valve that has no disclosed means of opening or closing, and therefore it's not an appropriate. I guess this is where I'm losing you, because people all the time claim something less than a complete embodiment because they're claiming usually their inventive components, so it's a piece of a larger invention, whether it's a chip that's standing alone, does nothing, it just sits there, but when you put it into a video recorder, it works wonders. Lots of times people claim component parts of a larger whole, and we don't say that it fails written description. Here they did not do that, Your Honor. They claimed a valve, and every single one of their claims claims either the valve itself or a method of using the valve. And so rather than saying in a hypothetical, I hereby claim a sub-combination of a piece of a valve, they didn't do that. They didn't follow the rules of sub-combination claiming, and they never made a disclosure of a separate utility for any kind of a valve that would operate without a spike, not once. And if I could, Your Honor, I do need to address the idea that Rogers was not contradicted. He was contradicted repeatedly in three different ways, and the courts have found that you can ignore declarations if either the declaration contradicts the spec, which it did repeatedly, if it's unsupported by evidence, which it is, or when it attempts to extrapolate beyond the written description. Rogers violated all three of these cardinal sins. He repeatedly contradicted the spec. He said the CL-36 works differently when the spec says it works the same. He said it works without the spike when the spec said no, it worked with the spike. He said the pre-cut slit was for spikeless embodiments. The spec said just the opposite. The only purpose for the pre-cut was to work with the spike. So your position is you didn't need to put on an expert to read it? We put on the evidence that showed that he was full of beans. He could say the sun set in the west, but in fact the spec says it rises in the west. So when you say you put on the evidence, you mean by pointing out the spec? That's correct. And the second one, Your Honor, is when he came to support this business about the trampoline, he cited three documents. The first one was dated in 2003 and unpublished, so it wasn't available, and it was 11 years too late after the filing date, so we eliminated that one. We don't need another expert to come in and say that. And then they relied on patents, which we showed on pages 65 and 66 of our brief, where he said, Rogers, that this shows that a medical implement will open the thing without a spike and without an internal element. And we showed that they both have piercing elements. Can you go back to my question because you went so fast, and it may well be that it's a complete response to the question I asked before, but I'm still sitting here struggling to appreciate what your answer really was. Why can't they just claim the chain? Why can't they claim? I don't understand why they have to claim the spike too. They've disclosed all of these elements. It would be like, Your Honor, I disclose a car. It's got four wheels in it. And then I say in which I have a vehicle with at least two wheels. Now I can cover a bicycle. That just won't fly with the written description requirement. First of all, they didn't do it if they wanted a sub-combination. They didn't do it under the technical sub-combination rules. They never said, We're claiming a piece of a valve. They always said they're claiming the valve. So technically they didn't do it right. Does that mean that that has to be a complete and operative invention as claimed, and there can never be other parts that form part of the – I mean, it's a comprising claim. That's why I'm a little – The part has to work. What they claim has to be able to work. And what their spikeless claims set forth is a valve that won't work. It's a valve that won't ever open. And their spec is repeated on that. And it's clear that Dr. Lopez never regarded this as his invention from both intrinsic evidence and extrinsic. Intrinsically, he says right off the bat in the field of his invention, My invention is a valve that is pierceable. We need to go no further than that to know that he did not regard the spikeless design as his invention. And in the extrinsic evidence, we see four years after he filed – But he said it's pierceable. It doesn't mean it has to be with a spike. Why couldn't it be with a tube? There's no disclosure of piercing with a tube. None, zero. And the closest they get is this business about the hole at the tip where Mr. Schirkenbach indicated – I think his quote was, It'll either have no point or it'll be – That's nonsense. What they say with the hole at the tip is they don't like it. That's what Lopez says. And he tells the public this. He says the problem with having a spike with a hole at the tip is it will core the seal. And so I don't like it. Now, Rogers invents this little stubby tube that solves the death problem. But that's not what Lopez told the public. What Lopez told the public is the way you solve that problem is don't use that non-preferred design with the hole at the tip. Move the holes downstream so they don't cut and so they can be a little smaller. So there's absolutely no disclosure in the written description of a spikeless embodiment or of any design that has no spike in it to open this seal. And while these things might sound trivial and simple to us, they're the subject of complex technology, and there is not one shred of evidence in this record, not one shred of evidence, that this Lopez design can open without a spike. The spec says it's got to have a spike. It says it's got to be embedded in the seal. The specification says all seals can open. You covered that before, and we've given you more than 2 minutes extra here. Thank you. Mr. Scherkenbach will give you 2 minutes and 20 seconds for purposes of parity, even though you exhausted your time. Thank you, Your Honor. I don't think I'll need the time. Just on this last point, there's not one shred of evidence that you've got a seal that will open without a spike. You do. You have the Rogers Declaration, which says a specific embodiment will open without a spike. It's uncontradicted. Even here in argument, Laris can't bring itself to say that the trampoline seal doesn't in fact operate that way. It does, and it has to, because their own device operates in that way. On this coring point, this is a bit to the side, but I just want to address it. The specification discloses seals that are not slit, seals that are pre-slit. It discloses spikes with pointed tips, spikes with a hole at the tip. If you have a hole at the tip and a seal that is slit, you don't have a coring problem. If you use a spike with a hole at the tip with a seal that's not pre-slit, you might. Can you talk about the written description real quick for me? I know you don't have much time. Well, of course we can claim less than all the parts. This Court has said so repeatedly. We cited the Cooper Cameron case. If you disclose an assembly or an invention that has A, B, C, and D, you are entitled to claim less than A, B, C, and D so long as it is supported, which it clearly is here. What does that mean, so long as it is supported? I agree the other elements would be supported, but I don't necessarily know how the specification explains, in the absence of a spike, how the invention is going to operate. I mean, you've explained it. You've got declarations and all kinds of things, but the spec doesn't necessarily. So what is it that you think needs to be disclosed to satisfy written declaration? I think that's the answer. Specification, obviously, is written for somebody of skill in the art. Mr. Rogers looks at that as somebody of skill in the art and says, look, I look at this embodiment and it works perfectly well without a spike or a tube or anything else. You don't need anything. The seal opens and it functions as a medical valve, not as a bicycle. We're not talking about something that's on a car and we claim a bicycle. It's still a medical valve. It's a valve that has some of the pieces that are in the examples in the spec, but not all of the pieces that are in the examples in the spec. Perfectly appropriate if it's allowable over the prior art, and in this case there's never been an argument that the spike or the tube had anything to do with patentability. I mean, the whole case is sort of hanging on this thing that never was a basis for at least an isolation for this patent being allowed in the first place. As for the utility point, the answer to that, again, well, there's two answers. Mr. Rogers says there's utility to a valve without a spike, and he says there's a specific embodiment in the specification that has that utility. Number two, again, their own device shows there's utility to such an embodiment because in their own device they have a seal that is pre-slit that opens under compression and is not pierced by a pointed spike. Utility can't legitimately be disputed. If it were, they could have put in a declaration from their own expert on it. They did not. Last point, just on the fees issues, and it's regrettable that this really has come up again, I think, in the way that it did. The big picture here is my client invented this in 1991, commercialized it in 1992 and 1993. Along comes Alaris in 1994, sees that, comes out with its own version. They're entitled to do that. They're entitled to design around, design their own thing, whatever it is they did, and they took the point off the spike and they made it short. Great for them. We are also entitled, though, to then look at our specification and say, you know what, we're entitled to a broader invention and to get claims that cover that broader invention. That's all that happened here, and I think the rhetoric has escalated to such a level about what is a very simple garden variety occurrence in many patent cases that has distracted us from what the real issues in the case are. Thank you. The case is submitted.